**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

IN RE: BOSTON SCIENTIFIC CORP.,
       PELVIC REPAIR SYSTEM
       PRODUCTS LIABILITY LITIGATION

MDL No. 2326

---------------------------------------------------------------

THIS DOCUMENT RELATES TO THE FOLLOWING CASE:

*Maria A. Valenzuela & Carlos Valenzuela
v. Boston Scientific Corp.*    No. 2:14-cv-03967

Pending before the court is the defendant's Motion for Summary Judgment Based on Statute of Limitations ("Motion") [Docket 29]. For the reasons set forth below, the Motion is **DENIED**.

    **I.**    **Background**

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 70,000 cases currently pending, approximately 15,000 of which are in the Boston Scientific Corp. ("BSC") MDL, MDL 2326. In an effort to efficiently and effectively manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all *Daubert* motions, summary judgment motions, and motions *in limine*, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, I ordered the plaintiffs and defendant to each select 50 cases, which would then become part of a "wave" of cases to be

prepared for trial and, if necessary, remanded. (*See* Pretrial Order # 65, *In re: Boston Scientific Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-002326, entered Dec. 19, 2013, *available at* http://www.wvsd.uscourts.gov/MDL/boston/orders.html). This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. The Valenzuelas's case was selected as a Wave 2 case by BSC.

On August 21, 2009, Ms. Valenzuela was surgically implanted with the Pinnacle Pelvic Floor Repair Kit (the "Pinnacle"), a product manufactured by BSC to treat POP. (BSC's Mot. for Summ. J. & Mem. of Law in Supp. Based on Statute of Limitations ("Mem. in Supp.") [Docket 29], at 3; Pl. Fact Sheet [Docket 29-1], at 5). She received her surgery at a hospital in Gilbert, Arizona. (Pl.'s Short Form Compl. [Docket 1] ¶ 11). Her surgery was performed by Dr. Eric Huish. (*Id.* ¶ 12).

Ms. Valenzuela claims that as a result of implantation of the Pinnacle, she has experienced injuries including dysuria and dyspareunia. (Mem. in Supp. [Docket 29], at 3; Pl. Fact Sheet [Docket 29-1], at 6). She testified that she began feeling pain and discomfort as early as a week after the surgery. (Maria Valenzuela Dep. [Docket 29-2], at 68:1–17). She also testified that in response to her symptoms, she visited her physician, Dr. Huish, who told her that what she was feeling was normal. (*Id.* at 68:7–69:4). In addition, Ms. Valenzuela stated that she did not suspect that the Pinnacle could be defective and BSC to blame until she saw a television commercial in 2011. (Pl. Fact Sheet [Docket 29-1], at 6). She brings the following claims against BSC: strict liability for design defect, manufacturing defect, and failure to warn; negligence; breaches of express and implied warranties; and punitive damages. (Pl.'s Short Form Compl. [Docket 1] ¶ 13). Mr. Valenzuela brings a claim of loss of consortium against BSC. (*Id.*). In the instant motion, BSC argues that each of the plaintiffs' claims is barred by Arizona's statute of

limitations, and consequently, the court should grant summary judgment in favor of BSC and dismiss the Valenzuelas's case.

## II. Legal Standards

### A. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

### B. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases. The choice of law for these pretrial motions depends on whether they concern federal or state law:

> When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). To determine the applicable state law for a dispositive motion based on the statute of limitations, I generally refer to the choice-of-law rules of the jurisdiction where the plaintiff first filed her claim. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010). However, if a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, as the Valenzuelas did in this case, I consult the choice-of-law rules of the state in which the implantation surgery took place. *See Sanchez v. Boston Scientific Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). Ms. Valenzuela received the Pinnacle implantation surgery in Arizona. Thus, the choice-of-law principles of Arizona guide this court's choice-of-law analysis.

The parties agree, as does this court, that these principles compel application of Arizona law to the plaintiff's claims. Arizona follows the "most significant relationship" test, as outlined in the Restatement (Second) of Conflict of Laws ("Restatement"), in determining choice of law questions. *Bates v. Superior Court*, 749 P.2d 1367, 1369 (Ariz. 1988). For torts claims, the Restatement takes several factors into account, including (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Id.* at 1370; Restatement § 145(2) (1971). This inquiry is qualitative, not quantitative, and a court should evaluate the contacts "according to their relative importance with respect to the particular issue." *Bates*, 749 P.2d at 1370 (quoting Restatement § 145(2)). In addition, in an action for a personal injury, the law of the state where the injury occurred should be applied unless some other state has a more significant relationship. *Id.* (citing Restatement § 146).

Here, the implantation surgery that allegedly resulted in Ms. Valenzuela's injuries took place in Arizona. Ms. Valenzuela is an Arizona resident, and she received medical care for her alleged injuries in Arizona. No other state has a more significant relationship. Thus, I apply Arizona's substantive law—including Arizona's statutes of limitations—to this case.

### III. Discussion

Resolution of the statute of limitations issue is normally a question of fact. *Landgraff v. Wagner*, 546 P.2d 26, 34 (Ariz. Ct. App. 1976). Personal injury claims are subject to a two-year statute of limitations. Ariz. Rev. Stat. § 12-542 (West 2015), *held unconstitutional on other grounds by Anson v. Am. Motors Corp.*, 747 P.2d 581 (Ariz. Ct. App. 1987). Although breach of warranty claims are typically subject to a four-year statute of limitations, *Id.* § 47-2725(A), when

5

such a breach is related to an underlying personal injury claim, the statute of limitations governing personal injury claims applies instead. *Wetzel v. Commercial Chair Co.*, 500 P.2d 314, 317 (Ariz. Ct. App. 1972). Thus, a two-year statute of limitations governs all of Ms. Valenzuela's claims. Furthermore, because a claim for loss of consortium is a derivative claim, *Barnes v. Outlaw*, 964 P.2d 484, 487 (Ariz. 1998), a two-year statute of limitations also governs Mr. Valenzuela's claim. *See id.*

The limitations period runs when the cause of action accrues, *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 966 (Ariz. 1995), subject to the "discovery rule." The discovery rule provides that "a cause of action . . . accrues when the plaintiff knew or by the exercise of reasonable diligence should have known of the defendants' conduct." *Lawhon v. L.B.J. Institutional Supply, Inc.*, 765 P.2d 1003, 1005 (Ariz. Ct. App. 1988) (quoting *Mayer v. Good Samaritan Hosp.*, 482 P.2d 497, 501 (Ariz. Ct. App. 1971)); *see also Anson v. Am. Motors Corp.*, 747 P.2d 581, 584 (Ariz. Ct. App. 1987) ("[A] cause of action does not 'accrue' until a plaintiff discovers or by the exercise of reasonable diligence should have discovered that he or she has been injured by the defendant's negligent conduct."). It is not enough that a plaintiff knows he or she has suffered some kind of injury; the plaintiff must have "knowledge sufficient to identify that a wrong occurred and caused injury." *Walk v. Ring*, 44 P.3d 990, 996 (Ariz. 2002) (quoting *Doe v. Roe*, 955 P.2d 951, 961 (Ariz. 1998)). In other words, a cause of action does not accrue until the plaintiff discovers his or her injury is attributable to a particular person's conduct. *Doe*, 955 P.2d at 961.

Here, BSC argues that the statute of limitations began to run in October 2009, pointing out that Ms. Valenzuela first began experiencing symptoms of her alleged injuries "[a]pproximately 2 months after [her] initial surgery in 8/2009." (Mem. in Supp., at 8 [Docket

6

29]; Pl. Fact Sheet [Docket 29-1], at 6). Ms. Valenzuela testified that she experienced dyspareunia after resuming sexual activities 40 days after her surgery. (Maria Valenzuela Dep. [Docket 29-2], at 67:21–68:6). Mr. Valenzuela testified that he could "feel the mesh" during intercourse, which felt abrasive to him. (Carlos Valenzuela Dep. [Docket 29-3], at 40:6–15, 42:5–43:2). Ms. Valenzuela also stated that she experienced pain, including dyspareunia, between August 2009 and August 2010. (Maria Valenzuela Dep. [Docket 29-2], at 68:1–69:14). Furthermore, she explained that she continued to feel pain in 2010 and 2011. (*Id.* at 69:15–23). Although BSC has shown that Ms. Valenzuela experienced symptoms of her alleged injuries throughout 2009, 2010, and 2011, BSC has not shown that she had knowledge sufficient to identify that a wrong had occurred and caused injury until 2011. (*See* Mem. in Supp. [Docket 29], at 8). Ms. Valenzuela testified that after she began experiencing pain and discomfort, she spoke with Dr. Huish, who told her that what she was feeling was "normal." (Maria Valenzuela Dep. [Docket 29-2], at 68:1–69:4.) She also explained that she did not see another medical care provider in the six months following the surgery, and she never went to an emergency room. (*Id.* at 69:5–9). It was not until 2011 that she saw a mesh litigation television commercial and "suspect[ed] that the product in me could be defective" and that BSC could be to blame. (Pl.'s Fact Sheet [Docket 29-1], at 6). Thus, until that time, a reasonable jury could find that Ms. Valenzuela did not have knowledge sufficient to identify that a wrong had occurred. *See Walk*, 44 P.3d at 996.

BSC asserts that pursuant to *Mack v. A.H. Robins Co.*, 573 F. Supp. 149 (D. Ariz. 1983), a plaintiff in Arizona does not need "to know of the defendant's improper conduct or defect in the product" for the statute of limitations to run. (BSC's Reply in Supp. of Its Mot. for Summ. J. Based on Statute of Limitations ("Reply") [Docket 63], at 3 (quoting *Mack*, 573 F. Supp. at

154)). However, *Anson v. American Motors Corp.*, as stated earlier, provides that "a cause of action does not 'accrue' until a plaintiff discovers or by the exercise of reasonable diligence should have discovered that he or she has been injured by the *defendant's negligent conduct*." 747 P.2d 581, 584 (Ariz. Ct. App. 1987) (emphasis added). *Mack* was decided before *Anson* changed the standard and therefore is no longer good law. BSC also cites to *Cooper v. Ross Stores, Inc.*, No. 1 CA-CV 13-0223, 2014 WL 800940 (Ariz. Ct. App. Feb. 27, 2014), in support of its position. In *Cooper*, a case decided on a motion to dismiss, the plaintiff was not reasonably diligent in discovering who had injured her. *Id.* at *1. Here, however, a reasonable jury could find that Ms. Straub was reasonably diligent in discovering BSC's possibly wrongful conduct.

The Valenzuelas filed suit on May 17, 2013. Ms. Valenzuela viewed the television commercial in 2011. The record does not go into further detail on when exactly in 2011 Ms. Valenzuela saw the television commercial and was put on notice. Thus, a reasonable jury could infer that Ms. Valenzuela viewed the television commercial before the two-year statute of limitations had run. On this reasoning, and bearing in mind my duty to draw all legitimate inferences in favor of the nonmovant, I **DENY** BSC's Motion [Docket 29] with respect to the Valenzuelas's claims.

### IV. Conclusion

As explained above, the defendant's Motion [Docket 29] is **DENIED**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 16, 2015

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE